J-S45013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC KEMP | : | |
| | : | |
| Appellant | : | No. 1372 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 8, 2014
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006120-2012

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                    **FILED:  DECEMBER 31, 2020**

Eric Kemp appeals *nunc pro tunc* from the judgment of sentence of one and one-half to three years of incarceration imposed following his conviction for manufacture, delivery, or possession with intent to deliver controlled substances ("PWID").  We affirm.

The facts adduced at the trial leading to Appellant's conviction are as follows. On March 27, 2012, Sergeant Tamika Allen of the Philadelphia Police Department observed Appellant on the 600 block of N. 41st Street in Philadelphia, Pennsylvania.  *See* N.T. Trial, 5/12/14, at 37.  Sergeant Allen observed Appellant make what she believed to be drug transactions with two separate individuals, wherein she witnessed the individuals hand an indeterminate amount of cash to Appellant, who responded by handing each person an unidentified "small item."  *Id*. at 45-46.  Sergeant Allen relayed these observations to other officers who subsequently arrested one of the

individuals, Jamie Michaeux, who was found to have a small orange-tinted packet of marijuana in his possession. ***Id***. at 42, 74-75. The second subject was not apprehended. ***Id***. at 61.

After these two interactions, Appellant left the area and Sergeant Allen lost sight of him. Approximately ten minutes later, a person matching Appellant's description was observed nearby by Officer Justin Falcone, who was wearing plainclothes and sitting in an unmarked police vehicle. ***Id***. at 103. Officer Falcone exited the vehicle, identified himself as a police officer and approached Appellant, who immediately took off running. ***Id***. at 102-103. As he chased Appellant, Office Falcone saw Appellant throw several unidentified items from his pockets, including something that made a loud "metallic sound" as it struck the ground. ***Id***. at 103, 110. Ultimately, Officer Falcone's partner, Officer Patrick DiDomenico, cut off Appellant's flight in his patrol vehicle, apprehended Appellant, and placed him in custody. ***Id***. at 112. A loaded .38 caliber revolver was recovered from an alleyway close to the scene of the chase by Officer Falcone, and Officer DiDomenico recovered $1.00 in U.S. currency from Appellant's jacket pocket. ***Id***. at 110-112, 151. Nothing else of evidentiary value was recovered on Appellant's person, or from the area of his flight from police. ***Id***.

Appellant filed a pre-trial motion to suppress the recovered firearm. At the subsequent hearing, Appellant argued that "Officer Falcone did not have reasonable suspicion or probable cause to chase and pursue" Appellant. ***See***

N.T. Hearing, 8/23/13, at 5. Ultimately, the trial court denied Appellant's motion to suppress. The case proceeded to a jury trial on charges of PWID and various charges related to Appellant's alleged unlawful possession of a weapon. The jury found Appellant not guilty on the weapons charge, but guilty of PWID. *See* N.T. Sentencing, 7/8/14, 3-4. Appellant was sentenced to one and one-half to three years of incarceration followed by five years of probation. *Id*. at 26.

Appellant's trial counsel did not file an appeal on his behalf. On August 9, 2016, Appellant filed a timely PCRA petition, alleging *per se* ineffective assistance of trial counsel. PCRA counsel was appointed, who filed an amended petition seeking reinstatement of Appellant's direct appellate rights *nunc pro tunc*. After an evidentiary hearing was held on November 18, 2016, the PCRA court denied the amended petition. On appeal, this Court vacated the PCRA court's order and remanded for reinstatement of Appellant's direct appeal rights. *See Commonwealth v. Kemp*, 201 A.3d 891 (Pa.Super. 2018) (unpublished memorandum at 7). This *nunc pro tunc* appeal followed.

Due to the novel procedural posture of the instant case, Appellant was never directed to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b). Additionally, the trial court issued a statement stating that it would not be filing an opinion pursuant to Rule 1925(a), on the grounds that the

- 3 -

original trial judge is no longer available.[1]  *See* Trial Court Order, 5/20/2019;

*see also*, *e.g.*, Pa.R.A.P. 1925(a)(1).  However, where the original trial judge

is "unavailable to provide a supplemental opinion," we are permitted to review

both "legal issues" and "factual findings" in the first instance.  *See Dolan v.*

*Hurd Millwork Company, Inc.*, 195 A.3d 169, 176 (Pa. 2018).[2]

      Appellant raises three issues for our review:[3]

> 1. Is the Appellant entitled to an arrest of judgment on the charge of PWID, where the verdict was not supported by sufficient evidence?
>
> 2. Is the Appellant entitled to a new trial on the charge of PWID, where the verdict was against the weight of the evidence?
>
> 3. Did the trial court err in denying the motion to suppress evidence even though there was no probable cause to apprehend and arrest Appellant?

Appellant's brief at 3.

      Appellant's first issue challenges the sufficiency of the evidence

underlying his conviction for PWID.  Our standard of review is *de novo*,

---

[1]  The trial judge was the Honorable Carolyn H. Nichols, who was elected to this Court in 2017.

[2]  The holding in *Dolan v. Hurd Millwork Company, Inc.*, 195 A.3d 169 (Pa. 2018), arose in the context of appellate review of a bench trial.  However, the scope of that holding was not explicitly limited to such a procedural posture and we discern that it applies with equal force to factual and legal findings made in connection with a jury trial.

[3]  On September 25, 2020, the Commonwealth filed an application for relief related to its briefing schedule and an application for permission to file a post-submission communication.  Both applications were granted.

although our scope of review is limited to considering the evidence of record and drawing all reasonable inferences arising therefrom in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Rushing*, 99 A.3d 416, 478 (Pa. 2014). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." *Commonwealth v. Brown*, 52 A.3d 320, 323 (Pa.Super. 2012).

At the outset of our analysis, we note that Appellant's legal argument with respect to sufficiency is woefully underdeveloped. Beyond a correct recitation of the basic legal standard applicable in the sufficiency context, Appellant does not cite the statute under which he was convicted and fails to identify or describe the discrete elements of the crime of PWID. *See* Appellant's brief at 8-10. Appellant's argument generally takes issue with the quality of the Commonwealth's evidence and attempts to undermine the testimony of the officers. *Id*. at 8 ("The evidence presented in this case is inherently unreliable, contradictory and insufficient to sustain a verdict.") (citing *Commonwealth v. Karkaria*, 625 A.2d 1167, 1170 (Pa. 1993)).[4]

_____

[4] A substantial portion of Appellant's discussion of sufficiency is devoted to citing and discussing irrelevant case law that does not pertain to sufficiency of the evidence. *See* Appellant's brief at 9-10. These inapposite cases uniformly concern legal issues related to probable cause, searches, and seizures. *See Commonwealth v. Shaw*, 383 A.2d 496 (Pa. 1978) (adjudicating issues related to whether police possessed probable cause independent of the sufficiency of the underlying conviction); *Commonwealth v. Boyer*, 314

We find no merit in Appellant's arguments. To sustain a conviction for PWID, the Commonwealth must prove both: (1) the possession of the controlled substance; and (2) the intent to deliver the controlled substance. *See*, *e.g.*, *Commonwealth v. Lee*, 956 A.2d 1024, 1028 (Pa.Super. 2008); *see also* 35 P.S. § 780-113(a)(30). "In determining whether there is sufficient evidence to support a PWID conviction, all facts and circumstances surrounding the possession are relevant, and the Commonwealth may establish the essential elements of the crime wholly by circumstantial evidence." *Commonwealth v. Bricker*, 882 A.2d 1008, 1015 (Pa.Super. 2005). Our Supreme Court has also noted that "the amount of the controlled substance is not crucial to establish an inference of possession with intent to deliver, if . . . other facts are present." *Commonwealth v. Ratsamy*, 934 A.2d 1233, 1237 (Pa. 2007) (internal citation and quotation marks omitted).

Sergeant Allen, who observed Appellant engage in two separate hand-to-hand transactions, was highly experienced and trained in narcotics

---

A.2d 317, 318 (Pa. 1974) (same); *Commonwealth v. Todd*, 584 A.2d 1002, 1004-05 (Pa.Super. 1991) (same); *Commonwealth v. Lewis*, 576 A.2d 63, 66-67 (Pa.Super. 1990) (same). These cases bear no relevance to the sufficiency of the Commonwealth's evidence. Overall, Appellant's argument is greatly wanting in detail and specificity. Our "traditional determination of evidentiary sufficiency . . . is fundamentally an individualized, case-by-case endeavor where the nature and type of evidence introduced at trial is measured according to . . . legal benchmarks." *Commonwealth v. Brown*, 52 A.3d 1139, 1165-66 (Pa. 2012) (distinguishing the holding in *Karkaria*, *supra*). While Appellant has noted potential inconsistencies in the testimonies of the officers described above, he has largely failed to explain how those inconsistencies do not align with the statutory elements of PWID.

operations. *See* N.T. Trial, 4/12/14, at 32-34. While she was not able to identify what Appellant was exchanging for money, her training and experience led her to conclude that she was observing drug transactions on a street corner in a high-crime area. *Id*. at 40-42. Appellant stipulated at trial that the substance ultimately recovered from Mr. Michaeux was marijuana. *Id*. at 156. Additionally, Sergeant Allen's testimony established that Mr. Michaeux was observed consummating a financial transaction with Appellant immediately before he was taken into custody. Moreover, it was undisputed that the only item found on Mr. Michaeux's person was the still-packaged container of marijuana. *Id*. at 74, 81-82. While Appellant himself did not have marijuana on his person when he was arrested, Officer Falcone testified that, while attempting to flee, Appellant discarded various objects from his person that were not successfully recovered.[5] *Id*. at 129.

Viewing this evidence in the light most favorable to the Commonwealth, we conclude that there is sufficient evidence to support Appellant's conviction for PWID. Evidence of Appellant's possession of the marijuana found on Mr. Michaeux may be circumstantial, but this evidence nonetheless establishes that: (1) Mr. Michaeux accepted a small object from Appellant in exchange for money immediately before Mr. Michaeux was taken into custody; and (2) no

---

[5] Appellant's flight from police, in and of itself, also evinces consciousness of guilt. *See*, *e.g.*, *Commonwealth v. Montgomery*, 234 A.3d 523, 540 (Pa. 2020) (collecting cases).

other items of note were found or recovered on Mr. Michaeux's person by the police. Specifically, these facts support a reasonable inference that the item passed to Mr. Michaeux by Appellant was the small packet of marijuana ultimately recovered by law enforcement. As such, there was sufficient evidence to demonstrate that Appellant possessed and delivered the marijuana recovered from Mr. Michaeux. No relief is due on this claim.

Appellant's second argument challenges the weight of the Commonwealth's evidence. A claim sounding in weight of the evidence is waived if the Appellant does not timely raise it in a post-sentence motion. *See* Pa.R.Crim.P. 607. Instantly, Appellant did not file a post-sentence motion, nor did he request reinstatement of his post-sentence rights in his initial PCRA petition. Thus, this Court's reinstatement of Appellant's appellate rights *nunc pro tunc* did **not** include the reinstatement of Appellant's post-sentence motion rights. **See Kemp**, *supra* at 7. Therefore, this claim is not properly before us and is waived. **See**, *e.g.*, **Commonwealth v. Fransen**, 986 A.2d 154, 157-58 (Pa.Super. 2009) (reinstatement of appellate rights *nunc pro tunc* does not automatically reinstate post-sentence motion rights).

Appellant's final argument alleges that the trial court erred in denying his pre-trial request to suppress the firearm seized following his foot chase from law enforcement.[6] **See** Appellant's brief at 12-15. When reviewing a

_____

[6] As noted above, Appellant was not convicted of any firearms offenses.

challenge of a denial of a motion to suppress, we are limited to determining whether the suppression court's factual findings are supported by the record and whether its legal conclusions are correct. *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010). When the Commonwealth is the prevailing party with respect to suppression, we may consider only the evidence presented by the Commonwealth at the suppression hearing, and that evidence for the defense which remains uncontradicted when read in the context of the record as a whole. *Commonwealth v. Wright*, 224 A.3d 1104, 1108 (Pa.Super. 2019).

From the outset of our analysis, we note that Appellant's argument is poorly developed in that it references and discusses case law that is largely irrelevant to the issue raised.[7] Nonetheless, we readily discern that Appellant is arguing that the officers did not have sufficient suspicion to detain him based upon the totality of the information available to them. Consequently, Appellant asserts that the firearm seized after his flight should have been suppressed by the trial court. *Id*. at 7 (asserting that the police "had no probable cause to pursue or search or apprehend and arrest" Appellant).

_____

[7] Specifically, Appellant cites to and discusses New Jersey case law concerning the "plain view" doctrine, which is not at issue in this case. We do not find this precedent relevant or persuasive in our review of this case. *See*, *e.g.*, *Branham v. Rohm and Haas Co.*, 19 A.3d 1094, 1107 (Pa.Super. 2011) ("Where there is controlling authority in Pennsylvania law, we need not consult the decisions of sister jurisdictions to reach a disposition.").

At the suppression hearing, both Sergeant Allen and Officer Falcone testified that their intent in stopping Appellant was to arrest him upon suspicion that he was engaged in the sale of narcotics. *See* N.T. Suppression Hearing, 8/23/13, at 10, 32, 38. As such, the officers intended to subject Appellant to a warrantless arrest, which must be supported by probable cause. *See*, *e.g.*, *Commonwealth v. Harris*, 176 A.3d 1009, 1022 (Pa.Super. 2017) ("It is well-settled that a warrantless arrest must be supported by probable cause."). With respect to probable cause, our Supreme Court has instructed as follows:

> [P]robable cause exists where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. With respect to probable cause, [our Supreme Court has] adopted a "totality of the circumstances" analysis . . . . The totality of the circumstances tests dictates that we consider all relevant facts, when deciding whether [the officers had] probable cause.

*Commonwealth v. Luv*, 735 A.2d 87, 90 (Pa. 1999) (internal citations omitted); *see also Harris*, *supra* at 1022 (same).

As this Court has noted in the past, the discrete issue of warrantless arrests following police observations of suspicious hand-to-hand transactions has been addressed by this Court on many prior occasions:

> Our case law is replete with decisions addressing probable cause for arrest in the context of drug trafficking on public streets. It is well-established that not every transaction involving unidentified property exchanged on a street corner gives rise to probable cause for arrest. *Commonwealth v. Colon*, 777 A.2d 1097, 1102 (Pa.Super. 2001). However, when certain other factors are present, police officers may be justified in concluding that the

- 10 -

transaction is drug-related, and hence that probable cause for arrest exists. *Id*.

*Commonwealth v. Wells*, 916 A.2d 1192, 1195 (Pa.Super. 2007). Indeed, our precedent indicates that police observations of even a single hand-to-hand transaction of unknown items may establish probable cause under the right circumstances. *See*, *e.g.*, *Commonwealth v. Smith*, 979 A.2d 913, 915, 919-20 (Pa.Super. 2009) (finding probable cause based upon an experienced narcotics officer's observation of a single hand-to-hand transaction in which an "unknown item" was exchanged for cash); *Wells*, *supra* at 1196-97 (same).

Instantly, the testimony at the suppression hearing in this case established the following relevant pieces of information: (1) Appellant was observed engaging in multiple hand-to-hand transactions, wherein he distributed small items in exchange for cash; (2) one of Appellant's putative "customers" was stopped by the police and still-packaged marijuana was the only relevant item discovered on his person; (3) the officer observing these interactions had eight years of experience in narcotics interdiction experience and had previously worked on "hundreds" of cases; and (4) Appellant had previously been arrested in the same neighborhood by Officer Falcone. *See* N.T. Suppression Hearing, 8/23/13, at 7-12, 32-33, 39-40.

Although inartfully drafted, Appellant's argument is essentially that Sergeant Allen's observation of the hand-to-hand transactions, alone, could not establish probable cause for an arrest as a matter of law. *See* Appellant's

- 11 -

brief at 12-15. However, there is no such *per se* rule under Pennsylvania law. ***Cf***. ***Smith***, ***supra*** at 919-20; ***Wells***, ***supra*** at 1195.

In sum, we find that Appellant's view of this issue flatly ignores the totality of the attendant circumstances. In both ***Smith*** and ***Wells***, this Court credited surveillance of a single, uncorroborated hand-to-hand transaction. ***Id***. Instantly, Sergeant Allen not only witnessed multiple such transactions, but also corroborated the likelihood that Appellant was selling drugs through the successful search and seizure of Mr. Michaeux that preceded Appellant's arrest. When viewed through the lens of Sergeant Allen's substantial experience, these facts are compelling. ***See Commonwealth v. Thompson***, 985 A.2d 928, 935 (Pa. 2009) ("[A] police officer's experience may fairly be regarded as a relevant factor in determining probable cause."). Furthermore, Appellant was also previously known to Officer Falcone, which further buttresses the Commonwealth's case. ***See***, ***e.g.***, ***Wells***, ***supra*** at 1196 ("[A] police officer's knowledge of drug-trafficking activity in a particular neighborhood . . . can derive from . . . the officer's involvement in the prior arrests of drug traffickers in the neighborhood.").

Placing the officers' observations and knowledge in the proper context, we conclude that they had probable cause to subject Appellant to a warrantless arrest. ***Accord Smith***, ***supra*** at 919-20; ***Wells***, ***supra*** at 1195. As detailed above, our review of the certified record supports these

conclusions and we discern no legal error in the trial court's denial of

Appellant's suppression request. Accordingly, no relief is due on this claim.[8]

Judgment of sentence affirmed.

Judgment Entered.

*Joseph D. Seletyn, Esq.*

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/31/20

_____

[8] We also note that the doctrine of harmless error applies in the context of suppression issues. ***See Commonwealth v. Petroll***, 738 A.2d 993, 1005 (Pa. 1999). Specifically, harmless error exists if the reviewing court is convinced from the record that, *inter alia*, the error did not prejudice the defendant or the prejudice was *de minimis*. ***See Commonwealth v. Fulton***, 179 A.3d 475, 493 (Pa. 2018). Even assuming, *arguendo*, that the trial court erred in denying Appellant's motion to suppress, we would find such error to be harmless. In relevant part, the jury acquitted Appellant of all firearms-related charges brought by the Commonwealth. ***See*** Trial Disposition and Dismissal Form, 5/14/14, at 1. Based upon this verdict, it is clear that the jury did not credit the firearm recovered from the alleyway as having belonged to Appellant. Consequently, Appellant was not prejudiced by the admission of the firearm at trial.